UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____    CIVIL ACTION NUMBER:

HAPPY CHEF, INC.,                  3:18-cv-16100-BRM-TJB

      Plaintiffs,                  SETTLEMENT CONFERENCE

      v.

RIPEN, LLC, MICHAEL TUDOR,
DAVID REKUC,

      Defendants.
_____
        CLARKSON S. FISHER BUILDING & U.S. COURTHOUSE
        402 East State Street
        Trenton, New Jersey 08608
        Friday, December 7, 2018
        Commencing at 2:55 p.m.

B E F O R E:               THE HONORABLE BRIAN R. MARTINOTTI,
                           UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

        WEINER LAW GROUP, LLP
        BY:  JAY R. McDANIEL, ESQUIRE
             STEFANI SCHWARTZ, ESQUIRE
        629 Parsippany Road
        Parsippany, NJ 07054
        For the Plaintiff

        HILL WALLACK LLP
        BY:  RICHARD A. CATALINA, JR., ESQUIRE
             BRETT BUTERICK, ESQUIRE
        21 Roszel Road
        Princeton, NJ 08540
        For the Defendants

 Certified as True and Correct as required by Title 28,
U.S.C., Section 753
     /S/ Megan McKay-Soule, RMR, CRR


        Megan McKay-Soule, Official Court Reporter
                   (215) 779-6437
              megansoule430@gmail.com

*United States District Court*
*District of New Jersey*

HAPPY CHEF, INC. V. RIPEN, LLC, et al

THE DEPUTY COURT CLERK:  All rise.

(Open court begins at 2:55 p.m.)

THE COURT:  Counsel, your appearances for the record.

MR. McDANIEL:  Good afternoon, Judge.  Jay McDaniel, Weiner Law Group for the plaintiff.

MS. SCHWARTZ:  Good afternoon, Your Honor.  Stephanie Schwartz, the Weiner Law Group, also for the plaintiff.

MR. CATALINA:  Good afternoon, Your Honor.  Richard Catalina from the law firm Hill Wallack on behalf of defendants Ripen, L.L.C., Michael Tudor and David Rekuc.

MR. BUTERICK:  Good afternoon, Your Honor.  Brett Buterick also of Hill Wallack, LLP, also on behalf of defendants Ripen, L.L.C., Michael Tudor and David Rekuc.

THE COURT:  Okay.  It's my understanding that the clients are in the courtroom; is that correct?

MR. McDANIEL:  That's correct, Your Honor.

THE COURT:  I'm going to ask that they pay attention to this proceeding.

We were here this morning for a return, or at least an application for an order to show cause that was filed originally ex parte and ultimately on notice.  The parties appeared.  The Court directed the parties to mediation with Judge Contillo.  There were several mediation sessions.  I believe some progress was made.  Unfortunately, the matter couldn't be resolved.

I received a letter from plaintiff, set it up for today.  I did receive a letter from defendant and then subsequently another letter from the defendant this morning that was filed about 11:23 last night indicating that there was a settlement in principle.  The parties were here at 9:30 in the morning and it is now a little before 3.  It's my understanding that there has been a final resolution; is that correct, counsel?

MR. McDANIEL:  That's correct, Your Honor.

MR. CATALINA:  That's correct, Your Honor.

THE COURT:  Okay.  So will someone -- is there a term sheet?

MR. McDANIEL:  It's on our computers, Judge, so we'd actually like to put it onto the record.

THE COURT:  Okay.  So somebody put the terms on the record, please.

MR. McDANIEL:  I will do that, Judge.

THE COURT:  Okay.

MR. McDANIEL:  Okay.  Ripen is today, and has, provided to us the identity of social media and analytics accounts that are at issue in this case, and they have represented to us to the best of their knowledge that they are complete.  We have reviewed that and provided them with some additions and the parties agree that in the event that there are other accounts, such as those that are at issue in this

case, they are marketing or analytics accounts and we'll provide them with a notice in writing and we'll get those transferred. We also agree that if there are credit cards that need to be changed, that that will be taken care of at the time of transfer.

We are making today a payment of $107,599.25 by check, which is for charges for services rendered by Ripen to Happy Chef in October of 2018.

The settlement agreement addresses certain creative assets. These are creative works that were prepared by Ripen in the course of the services that they performed for Happy Chef. They include the photography. And for the purposes of the settlement agreement, we're dealing with photography that was taken during 2018. We also agreed that the creative assets that are the subject of the settlement agreement include photography that was included in the current catalogues for 2018 and high resolution logo and graphics files that are used by Happy Chef in its advertising and promotion and which are the work product of Ripen.

Ripen is going to provide us thumbnails of these creative works by Wednesday, December 12th, 2018. Happy Chef will review those over the next five business days and will identify any missing items from the creative works by the following Wednesday, December 19th, 2018.

The terms of the settlement provide for Ripen to

transfer custody and control of the website, the ecommerce website, which includes the website itself, databases and related technology; that they are to be transferred to the custody of Happy Chef.  This is a process that's going to have some different stages to it.

Our settlement agreement provides that Ripen will provide access to all of the code and the databases to Happy Chef within three days.  Happy Chef may not use any of the codes or databases that it receives to recreate a production environment that's a website that's in production for public sale.

Ripen will provide copies of all of the existing documentation, technical specifications and work tickets generated in the maintenance or development of the website to Happy Chef by December 12th, 2018.

Ripen will then transfer the website by removing from a hosting account in a third party called Rackspace all of the other clients that are in the shared corporate account leaving Happy Chef with the sole -- this is owner of that account and Happy Chef will then take over control of the website.

In addition, there's a security utility called Cloudflare that is closely aligned -- or that's used in the website.  Ripen is going to follow the same procedure and remove all of its other corporate clients from the corporate account that's currently used by Happy Chef and then that way

HAPPY CHEF, INC. V. RIPEN, LLC, et al

effect a transfer.

We just had a discussion.  There is -- there are web domain names that are a GoDaddy.  Those need to be transferred.  There's -- the timing of that, actually, we would like that done as soon as possible, but they're connected with the domains that I'm going -- part of the -- one of the things we have to do is coordinate exactly when that's going to occur.

In terms of continuing with the website, there's going to be a turnover of the website, as I described.  At that point, the parties have agreed that Happy Chef's consultant, which is a company named Cora Technology, will be able to review the website and make sure that there's no malicious code or that there have been no changes to the website that have occurred from the time that we were provided with the code and database copies.

If there are, then Happy Chef, through its consultant, is to give notice to Ripen of those defects and it will get Ripen to remove the code or the changes.

The terms of the agreement provide that Ripen will continue to facilitate the transfer of the website, both by transfer of knowledge about the operations and any -- what we anticipate will be very limited maintenance requirements that might occur in the next few weeks.  There's a cap on the hours that Ripen is obligated to provide of 50 -- that's 50 hours.

After that, they can bill through at $150 an hour for any additional work that may be necessary.  All of those activities are going to be supervised by the third party consultant Cora Technology, which is going to be supervising the transfer of the website.

The payments under this agreement, in addition to the check today for October time, there's an invoice that was rendered for November.  It's due normally on the 15th.  The settlement provides that invoice in the amount of $110,420.00 is to be paid to -- to Ripen two days after it receives the marketing assets and those are the very social media accounts and advertising accounts.

In addition, there's another payment of $141,200.00 that is to be made two days after we receive and approve the creative assets.  Those were the photographs, logos, and catalog art.  There is a subsequent payment then due of $70,100.06 that is to be paid after the website -- custody of the website has been transferred and Cora certifies that the transfer was made without any malicious code or changes.

The final payment of $70,100.06 will be made after Cora certifies that the transfer has been completed, and there's an outside date for that of 60 days from the date that Cora determines that the website has been transferred free of any malicious code.  So it's really a two-step process.  They transfer custody.  Cora examines it and makes sure that

there's no malicious code on it.  They then do the knowledge transfer and any training during that period of time.  Ripen is responsible for that and for any incidental maintenance. They've got their time capped at 50 hours.  When that whole process is complete, no later than 60 days, thereafter there's a final payment made of $70,100.06.

The parties release each other from all claims that were brought or which could have been brought in this action. The parties further agree that they will not bring related claims against any third parties, including principals or vendors or agents of anybody who's been involved in this. This agreement is intended to be binding and complete.  All of the terms that are being put on the record today are, in fact, enforceable and it's enforceable notwithstanding the fact that the parties may later claim that there was a term that should have been included.

So the terms, such as they've identified, are, in fact, enforceable.  Nonetheless, we recognize that if there is a -- an incident, if there's another term that the parties later realize they might have included or would like to include, we've agreed that we will mediate in an attempt to negotiate that in good faith.

The -- excuse me one second.  I have nothing else.  Do you have anything else, Rich?

MR. CATALINA:  Yes.  Richard Catalina, Your Honor, on

—————HAPPY CHEF, INC. V. RIPEN, LLC, et al—————

behalf of defendants.

A couple things here.  Mr. McDaniel did a very fine job of setting out the basic terms.  Just a couple of points of clarification.  He stated that Ripen would provide access to the code and database.  Essentially, Ripen will be providing to Happy Chef not access but an actual copy of the code and the database.  Just wanted to make that clarification.

Additionally, we have provided on this date -- or defendants have provided on this date the list of the social media or marketing accounts and we had agreed upon a period of three business days in which Happy Chef could come back with questions or Happy Chef's consultant.  But with questions on that.  That was just to keep that process closed so that my clients can focus on the transfer.

As to the final payment that Mr. McDaniel mentioned regarding the transfer of the website being 60 days, obviously that can happen sooner than 60 days from the actual transfer of the site if Cora deems that everything is acceptable and they have received the sufficient knowledge from Ripen as to the operations of the website under the 50-hour cap. Obviously, if Cora is fine with that, prior to 60 days they can sign off on that.  That would then trigger the final payment at that point in time.

Also, just another point of clarification.  Mr. McDaniel mentioned catalog art.  I believe it's really just

HAPPY CHEF, INC. V. RIPEN, LLC, et al

the catalog images, photographs, and I just wanted to make that distinction.  Is that correct?

MR. McDANIEL:  Correct.

THE COURT:  Okay.  All right.  Counsel, is that your understanding of the agreement?

MR. McDANIEL:  Judge, I apologize.  I had one more page of notes that I skipped over.

THE COURT:  Okay.

MR. McDANIEL:  They're not -- the parties are -- Ripen is giving to Happy Chef a fully irrevocable, fully paid perpetual nonexclusive license in any creative work that it made on Happy Chef's behalf.  Happy Chef is giving back to Ripen a license for use of the creative work for its own business purposes.  Specifically, for the motion, and Ripen agrees that those creative assets will not be used on behalf of any third party.

We have one other minor point.  Ripen's going to transfer copies of printer proofs to us within ten days.

Did we do the restrictive code?  I'm asking my adversary.  Ripen has agreed, and one of the terms will be, that Ripen will not use any of the information that it had come into possession of during the course of this relationship to start its own competing business.

MR. CATALINA:  Correct.

MR. McDANIEL:  We're not intending to limit Ripen in

its ability to work as an agency for other companies that may or may not sell competitive products.

Finally, we also discussed that any information that's in Ripen's possession that's of our confidential and proprietary information, such as customer lists and the like, will be destroyed or returned to us when this process is complete.

MR. CATALINA:  Correct.

THE COURT:  Okay.  Are those all the terms of the agreement?

MR. CATALINA:  I think one more, Your Honor.  I'm sorry.  I apologize.  I know you're calling in and we greatly appreciate that.

THE COURT:  Not a problem.

MR. CATALINA:  Obviously, I don't think there should be any disagreement on the other side.  But just from my client's perspective, being the defendants in this case and not having had the opportunity to file any responsive pleading, just the understanding that there's no admission of any liability on their part.

MR. McDANIEL:  That's understood, Judge.  This is a settlement for purposes without any concessional liability.

THE COURT:  Okay.  Are those all the terms of the agreement, counsel?

MR. McDANIEL:  Those are, Judge.  It was a little

HAPPY CHEF, INC. V. RIPEN, LLC, et al

complicated.

THE COURT:  That's okay.  So I'd like, first, plaintiff to select a representative who's -- actually, one plaintiff, one defendant that Dana is going to swear in.

THE DEPUTY COURT CLERK:  Okay, Judge.  I just need one of you.  Sir, raise your right hand and place your left hand on the Bible.

(**JAMES NADLER**, HAVING BEEN DULY SWORN/AFFIRMED, TESTIFIED AS FOLLOWS:)

THE DEPUTY COURT CLERK:  Please state and spell your name for the record.

THE WITNESS:  James Nadler, J-A-M-E-S, N-A-D-L-E-R.

THE DEPUTY COURT CLERK:  Judge, shall I swear in the defendant, too?

THE COURT:  Yes.  Just one representative, please.

THE DEPUTY COURT CLERK:  Please raise your right hand and place your left hand on the Bible.

(**MICHAEL TUDOR**, HAVING BEEN DULY SWORN/AFFIRMED, TESTIFIED AS FOLLOWS:)

THE DEPUTY COURT CLERK:  Please state and spell your name for the record.

THE WITNESS:  Michael Tudor, M-I-C-H-A-E-L, T-U-D-O-R.

THE DEPUTY COURT CLERK:  Thank you.

THE COURT:  Okay.

*United States District Court*
*District of New Jersey*

HAPPY CHEF, INC. V. RIPEN, LLC, et al

MR. CATALINA:  I'm sorry, Your Honor.  Richard Catalina.  Mr. Tudor is CEO of Ripen.  He was also named individually.  Also present here with us is David Rekuc, an employee of the company who was named individually.  Would you like him to be sworn in as well?

THE COURT:  No.  Not necessary.  I assume, plaintiff's counsel, that you're going to dismiss the individual claims?

MR. McDANIEL:  We are, Your Honor.

THE COURT:  Okay.  And we're going to dismiss them now --

MR. McDANIEL:  Yes, sir.

THE COURT:  -- before we proceed?

MR. McDANIEL:  Yes.

THE COURT:  They're not defendants anymore.

MR. CATALINA:  Thank you.

THE COURT:  No problem.  Plaintiff's representative, sir, state your name.

THE WITNESS:  James Nadler.

THE COURT:  What is your position with Happy Chef?

THE WITNESS:  President.

THE COURT:  Okay.  Do you have the capability to bind the company in your capacity?

THE WITNESS:  Yes.

THE COURT:  And you're here today pursuant to an

*United States District Court*
*District of New Jersey*

HAPPY CHEF, INC. V. RIPEN, LLC, et al

order to show cause that was filed several weeks ago by your lawyer; is that correct?

THE WITNESS:  Yes.

THE COURT:  And there have been several attempts at resolving the case, initially with Judge Contillo and then this morning; is that correct?

THE WITNESS:  That's correct, Your Honor.

THE COURT:  And the attempts have been successful in that this matter has now been resolved, correct?

THE WITNESS:  That's correct, Your Honor.

THE COURT:  Sir, did you hear the terms that were placed on the record?

THE WITNESS:  Yes.

THE COURT:  Do you understand the terms?

THE WITNESS:  Yes, I do.

THE COURT:  Would it be fair to say that the terms are the result of arm's length negotiations between your lawyer and the defendant's lawyer as well as and with the assistance of mediation with Judge Contillo and, candidly, minimal assistance of this Court; would that be a fair statement?

THE WITNESS:  Yes, it would, Your Honor.

THE COURT:  Okay.  Are you entering into this agreement freely and voluntarily?

THE WITNESS:  Yes.

HAPPY CHEF, INC. V. RIPEN, LLC, et al

THE COURT:  Sir, do you understand that you have the right to your application for an order to show cause to be adjudicated as well as this entire matter being litigated through the federal court system?

THE WITNESS:  Yes.

THE COURT:  Do you understand, sir, that by settling this case you are waiving your right to a trial and that litigation?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Did you hear all the terms that were placed on the record?

THE WITNESS:  Yes, I did.

THE COURT:  Do you understand all the terms that were placed on the record?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Do you intend to be bound by the terms that were placed on the record?

THE WITNESS:  Yes, I do.

THE COURT:  Does your company have the capability to comply with the terms that were placed on the record?

THE WITNESS:  Yes, it does, Your Honor.

THE COURT:  Do you feel that you're being forced or coerced into resolving this matter?

THE WITNESS:  No.

THE COURT:  You've been represented by counsel for

HAPPY CHEF, INC. V. RIPEN, LLC, et al

all of this matter?

THE WITNESS:  Yes, I have.

THE COURT:  Have they answered all of your questions?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Are you satisfied with their legal representation?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Do you have any questions of your lawyers at this particular time?

THE WITNESS:  Not at this time.

THE COURT:  Do you have any questions of the Court?

THE WITNESS:  No.

THE COURT:  Okay.

Counsel, do you have any questions of your client?

MR. McDANIEL:  No, Your Honor, I do not.

THE COURT:  Defense counsel, do you have any questions of this representative?

MR. CATALINA:  No, Your Honor.

THE COURT:  I'm going to ask that your representative please testify.  Sir, what is your name?

THE WITNESS:  Michael Tudor.

THE COURT:  Okay.  And what is your capacity with the company, sir?

THE WITNESS:  CEO.

THE COURT:  Sir, do you understand you were named

individually, but you're no longer an individual defendant nor is the other individual there a defendant any longer; do you understand that, sir?

THE WITNESS:  Yes, I do.

THE COURT:  Do you have the ability to bind your company?

THE WITNESS:  Yes.

THE COURT:  Sir, did you hear all the terms that were placed on the record?

THE WITNESS:  Yes.

THE COURT:  Do you understand those terms?

THE WITNESS:  Yes.

THE COURT:  Are you entering into this agreement freely and voluntarily?

THE WITNESS:  Yes.

THE COURT:  The terms require you to perform some functions and have certain obligations upon your company; is that correct?

THE WITNESS:  Yes.

THE COURT:  Do you have the ability to comply with those terms?

THE WITNESS:  Yes.

THE COURT:  Would it be fair to say that the terms of the settlement were the product of arm's length negotiations between you, your adversary, with the assistance of counsel?

HAPPY CHEF, INC. V. RIPEN, LLC, et al

THE WITNESS:  Yes.

THE COURT:  In addition, there was a mediation with Judge Contillo as well as some Court involvement that resulted in the settlement; is that correct?

THE WITNESS:  Yes.

THE COURT:  Do you want me to say minimal Court involvement like I said the other time, or are you comfortable with Court involvement?  In any event, you've been represented by counsel?

THE WITNESS:  Yes.

THE COURT:  Has counsel answered all of your questions?

THE WITNESS:  Yes.

THE COURT:  Are you satisfied with their legal representation?

THE WITNESS:  Yes.

THE COURT:  Do you have any questions of your lawyer?

THE WITNESS:  No.

THE COURT:  Do you have any questions of the Court?

THE WITNESS:  No.

THE COURT:  And you intend to be bound by the terms of the settlement, correct?

THE WITNESS:  Yes.

THE COURT:  Okay.

Counsel, any questions of your client?

*United States District Court*
*District of New Jersey*

HAPPY CHEF, INC. V. RIPEN, LLC, et al

MR. CATALINA:  No, Your Honor.

THE COURT:  Plaintiff's counsel, any questions of the defendant?

MR. McDANIEL:  No questions, Your Honor.

THE COURT:  Plaintiff's counsel, anything further on the record?

MR. McDANIEL:  Judge, you know, we're dismissing -- I think the record should be clear that we're dismissing all of the actions, the claims that were brought.  This is a copyright action, so I want to make it clear that this is a dismissal with prejudice and without costs, including attorney's fees.

THE COURT:  Okay.  I appreciate that.  Candidly, I just wanted to get the individual defendants out before the colloquy on the settlement.

Defense counsel, anything for the record?

MR. CATALINA:  No, Your Honor.

THE WITNESS:  Okay.

THE COURT:  I find the parties have entered into the settlement freely and voluntarily.  They understand the terms of the settlement, which was the product of arm's length negotiations between each other with the capable assistance of counsel and further assistance of Judge Contillo.  They intend to be bound by the terms of the settlement.  They have been represented by their lawyers and they're satisfied with their

HAPPY CHEF, INC. V. RIPEN, LLC, et al

lawyer's representation.  Accordingly, this matter will be marked as settled and the matter will be dismissed with prejudice.

Counsel, anything further?

MR. McDANIEL:  Nothing from the plaintiff, Your Honor.

MR. CATALINA:  Nothing for the defense, Your Honor.

THE COURT:  Okay.  Counsel, thank you.  Your clients should be very satisfied with your legal representation, appreciating the hornets nest of litigation that they would have embarked upon had you not resolved the case.  Well done. The Court appreciates your cooperation and the fine representation that you've done for your client.

MS. SCHWARTZ:  Thank you, Your Honor.

MR. CATALINA:  Thank you, Your Honor.

THE COURT:  Enjoy the day, have a great holiday season.

THE DEPUTY COURT CLERK:  All rise.

(Court concludes at 3:21 p.m.)

*United States District Court*
*District of New Jersey*

**REPORTER'S CERTIFICATE**.


I, **Megan McKay-Soule, RMR, CRR**, Official Court Reporter of the United States District Court for the District of New Jersey, do hereby certify that the foregoing proceedings are a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I further certify that I am neither related to any of the parties by blood or marriage, nor do I have any interest in the outcome of the above matter.


**/S/ Megan McKay-Soule, RMR, CRR**    **December 14, 2018**

               Court Reporter                                    Date

*United States District Court*
*District of New Jersey*

**$**

**$107,599.25** [1] - 4:6
**$110,420.00** [1] - 7:9
**$141,200.00** [1] - 7:13
**$150** [1] - 7:1
**$70,100.06** [3] - 7:17, 7:20, 8:6

**/**

**/S** [2] - 1:23, 21:15

**0**

**07054** [1] - 1:16
**08540** [1] - 1:20
**08608** [1] - 1:10

**1**

**11:23** [1] - 3:4
**12th** [2] - 4:21, 5:15
**14** [1] - 21:15
**15th** [1] - 7:8
**19th** [1] - 4:24

**2**

**2018** [8] - 1:10, 4:8, 4:14, 4:17, 4:21, 4:24, 5:15, 21:15
**21** [1] - 1:19
**215** [1] - 1:25
**28** [1] - 1:22
**2:55** [2] - 1:11, 2:2

**3**

**3** [1] - 3:6
**3:18-cv-16100-BRM-TJB** [1] - 1:3
**3:21** [1] - 20:19

**4**

**402** [1] - 1:9

**5**

**50** [3] - 6:25, 8:4
**50-hour** [1] - 9:20

**6**

**60** [5] - 7:22, 8:5, 9:16, 9:17, 9:21
**629** [1] - 1:16

**7**

**7** [1] - 1:10

**753** [1] - 1:22
**779-6437** [1] - 1:25

**9**

**9:30** [1] - 3:5

**A**

**ability** [3] - 11:1, 17:5, 17:20
**able** [1] - 6:12
**acceptable** [1] - 9:18
**access** [3] - 5:7, 9:4, 9:6
**accordingly** [1] - 20:1
**account** [4] - 5:17, 5:18, 5:19, 5:25
**accounts** [6] - 3:21, 3:25, 4:1, 7:11, 7:12, 9:10
**accurate** [1] - 21:7
**ACTION** [1] - 1:2
**action** [2] - 8:8, 19:10
**actions** [1] - 19:9
**activities** [1] - 7:3
**actual** [2] - 9:6, 9:17
**addition** [4] - 5:21, 7:6, 7:13, 18:2
**additional** [1] - 7:2
**additionally** [1] - 9:8
**additions** [1] - 3:24
**addresses** [1] - 4:9
**adjudicated** [1] - 15:3
**admission** [1] - 11:19
**adversary** [2] - 10:20, 17:25
**advertising** [2] - 4:18, 7:12
**afternoon** [4] - 2:4, 2:6, 2:8, 2:11
**agency** [1] - 11:1
**agents** [1] - 8:11
**ago** [1] - 14:1
**agree** [3] - 3:24, 4:3, 8:9
**agreed** [5] - 4:14, 6:11, 8:21, 9:10, 10:20
**agreement** [12] - 4:9, 4:13, 4:15, 5:6, 6:20, 7:6, 8:12, 10:5, 11:10, 11:24, 14:24, 17:13
**agrees** [1] - 10:15
**aligned** [1] - 5:22
**amount** [1] - 7:9
**analytics** [2] - 3:20, 4:1
**answered** [2] - 16:3,

18:11
**anticipate** [1] - 6:23
**apologize** [2] - 10:6, 11:12
**appearances** [1] - 2:3
**appeared** [1] - 2:22
**application** [2] - 2:20, 15:2
**appreciate** [2] - 11:13, 19:13
**appreciates** [1] - 20:12
**appreciating** [1] - 20:10
**approve** [1] - 7:14
**arm's** [3] - 14:17, 17:24, 19:21
**art** [2] - 7:16, 9:25
**AS** [2] - 12:8, 12:18
**assets** [5] - 4:10, 4:15, 7:11, 7:15, 10:15
**assistance** [5] - 14:19, 14:20, 17:25, 19:22, 19:23
**assume** [1] - 13:6
**attempt** [1] - 8:21
**attempts** [2] - 14:4, 14:8
**attention** [1] - 2:17
**attorney's** [1] - 19:12

**B**

**basic** [1] - 9:3
**BEEN** [2] - 12:8, 12:18
**begins** [1] - 2:2
**behalf** [5] - 2:9, 2:12, 9:1, 10:12, 10:15
**best** [1] - 3:22
**between** [3] - 14:17, 17:25, 19:22
**Bible** [2] - 12:7, 12:17
**bill** [1] - 7:1
**bind** [2] - 13:22, 17:5
**binding** [1] - 8:12
**blood** [1] - 21:11
**bound** [3] - 15:16, 18:21, 19:24
**Brett** [1] - 2:11
**BRETT** [1] - 1:19
**BRIAN** [1] - 1:12
**bring** [1] - 8:9
**brought** [3] - 8:8, 19:9
**BUILDING** [1] - 1:9
**business** [4] - 4:22, 9:11, 10:14, 10:23
**BUTERICK** [2] - 1:19, 2:11
**Buterick** [1] - 2:12
**BY** [2] - 1:15, 1:18

**C**

**candidly** [2] - 14:19, 19:13
**cap** [2] - 6:24, 9:20
**capability** [2] - 13:22, 15:19
**capable** [1] - 19:22
**capacity** [2] - 13:23, 16:22
**capped** [1] - 8:4
**cards** [1] - 4:3
**care** [1] - 4:4
**case** [6] - 3:21, 4:1, 11:17, 14:5, 15:7, 20:11
**CATALINA** [15] - 1:18, 2:8, 3:10, 8:25, 10:24, 11:8, 11:11, 11:15, 13:1, 13:16, 16:18, 19:1, 19:17, 20:7, 20:15
**Catalina** [3] - 2:9, 8:25, 13:2
**catalog** [3] - 7:16, 9:25, 10:1
**catalogues** [1] - 4:17
**CEO** [2] - 13:2, 16:24
**certain** [2] - 4:9, 17:17
**CERTIFICATE** [1] - 21:2
**Certified** [1] - 1:22
**certifies** [2] - 7:18, 7:21
**certify** [2] - 21:6, 21:10
**changed** [1] - 4:4
**changes** [3] - 6:14, 6:19, 7:19
**charges** [1] - 4:7
**check** [2] - 4:6, 7:7
**CHEF** [1] - 1:3
**Chef** [17] - 4:8, 4:12, 4:18, 4:21, 5:4, 5:8, 5:15, 5:19, 5:20, 5:25, 6:17, 9:6, 9:11, 10:10, 10:12, 13:20
**Chef's** [3] - 6:11, 9:12, 10:12
**CIVIL** [1] - 1:2
**claim** [1] - 8:15
**claims** [4] - 8:7, 8:10, 13:8, 19:9
**clarification** [3] - 9:4, 9:7, 9:24
**CLARKSON** [1] - 1:9
**clear** [2] - 19:8, 19:10
**CLERK** [8] - 2:1, 12:5, 12:10, 12:13, 12:16, 12:20, 12:24, 20:18

**client** [3] - 16:14, 18:25, 20:13
**client's** [1] - 11:17
**clients** [5] - 2:15, 5:18, 5:24, 9:14, 20:8
**closed** [1] - 9:13
**closely** [1] - 5:22
**Cloudflare** [1] - 5:22
**code** [10] - 5:7, 6:14, 6:16, 6:19, 7:19, 7:24, 8:1, 9:5, 9:6, 10:19
**codes** [1] - 5:9
**coerced** [1] - 15:23
**colloquy** [1] - 19:15
**comfortable** [1] - 18:7
**Commencing** [1] - 1:11
**companies** [1] - 11:1
**company** [7] - 6:12, 13:4, 13:23, 15:19, 16:23, 17:6, 17:17
**competing** [1] - 10:23
**competitive** [1] - 11:2
**complete** [4] - 3:23, 8:5, 8:12, 11:7
**completed** [1] - 7:21
**complicated** [1] - 12:1
**comply** [2] - 15:20, 17:20
**computers** [1] - 3:13
**concessional** [1] - 11:22
**concludes** [1] - 20:19
**CONFERENCE** [1] - 1:4
**confidential** [1] - 11:4
**connected** [1] - 6:6
**consultant** [4] - 6:11, 6:17, 7:4, 9:12
**Contillo** [5] - 2:23, 14:5, 14:19, 18:3, 19:23
**continue** [1] - 6:21
**continuing** [1] - 6:9
**control** [2] - 5:1, 5:20
**cooperation** [1] - 20:12
**coordinate** [1] - 6:7
**copies** [3] - 5:12, 6:16, 10:18
**copy** [1] - 9:6
**copyright** [1] - 19:10
**Cora** [8] - 6:12, 7:4, 7:18, 7:20, 7:22, 7:25, 9:18, 9:21
**corporate** [3] - 5:18, 5:24
**correct** [17] - 2:15, 2:16, 3:8, 3:9, 3:10,

10:2, 10:3, 10:24, 11:8, 14:2, 14:6, 14:7, 14:9, 14:10, 17:18, 18:4, 18:22
**Correct** [1] - 1:22
**costs** [1] - 19:11
**counsel** [18] - 2:3, 3:8, 10:4, 11:24, 13:7, 15:25, 16:14, 16:16, 17:25, 18:9, 18:11, 18:25, 19:2, 19:5, 19:16, 19:23, 20:4, 20:8
**couple** [2] - 9:2, 9:3
**course** [2] - 4:11, 10:22
**COURT** [75] - 1:1, 2:1, 2:3, 2:14, 2:17, 3:11, 3:15, 3:18, 10:4, 10:8, 11:9, 11:14, 11:23, 12:2, 12:5, 12:10, 12:13, 12:15, 12:16, 12:20, 12:24, 12:25, 13:6, 13:10, 13:13, 13:15, 13:17, 13:20, 13:22, 13:25, 14:4, 14:8, 14:11, 14:14, 14:16, 14:23, 15:1, 15:6, 15:10, 15:13, 15:16, 15:19, 15:22, 15:25, 16:3, 16:5, 16:8, 16:11, 16:13, 16:16, 16:19, 16:22, 16:25, 17:5, 17:8, 17:11, 17:13, 17:16, 17:20, 17:23, 18:2, 18:6, 18:11, 18:14, 18:17, 18:19, 18:21, 18:24, 19:2, 19:5, 19:13, 19:19, 20:8, 20:16, 20:18
**Court** [13] - 1:24, 2:22, 14:20, 16:11, 18:3, 18:6, 18:8, 18:19, 20:12, 20:19, 21:4, 21:5, 21:16
**court** [2] - 2:2, 15:4
**COURTHOUSE** [1] - 1:9
**courtroom** [1] - 2:15
**creative** [9] - 4:9, 4:10, 4:14, 4:21, 4:23, 7:15, 10:11, 10:13, 10:15
**credit** [1] - 4:3
**CRR** [3] - 1:23, 21:4, 21:15
**current** [1] - 4:16
**custody** [4] - 5:1, 5:4, 7:17, 7:25

**customer** [1] - 11:5

# D

**Dana** [1] - 12:4
**database** [3] - 6:16, 9:5, 9:7
**databases** [3] - 5:2, 5:7, 5:9
**Date** [1] - 21:16
**date** [5] - 7:22, 9:8, 9:9, 21:9
**David** [3] - 2:10, 2:13, 13:3
**DAVID** [1] - 1:7
**days** [11] - 4:22, 5:8, 7:10, 7:14, 7:22, 8:5, 9:11, 9:16, 9:17, 9:21, 10:18
**dealing** [1] - 4:13
**December** [5] - 1:10, 4:21, 4:24, 5:15, 21:15
**deems** [1] - 9:18
**defects** [1] - 6:18
**defendant** [7] - 3:2, 3:3, 12:4, 12:14, 17:1, 17:2, 19:3
**defendant's** [1] - 14:18
**defendants** [7] - 2:10, 2:13, 9:1, 9:9, 11:17, 13:15, 19:14
**Defendants** [2] - 1:8, 1:20
**defense** [3] - 16:16, 19:16, 20:7
**DEPUTY** [8] - 2:1, 12:5, 12:10, 12:13, 12:16, 12:20, 12:24, 20:18
**described** [1] - 6:10
**destroyed** [1] - 11:6
**determines** [1] - 7:23
**development** [1] - 5:14
**different** [1] - 5:5
**directed** [1] - 2:22
**disagreement** [1] - 11:16
**discussed** [1] - 11:3
**discussion** [1] - 6:2
**dismiss** [2] - 13:7, 13:10
**dismissal** [1] - 19:11
**dismissed** [1] - 20:2
**dismissing** [2] - 19:7, 19:8
**distinction** [1] - 10:2
**DISTRICT** [3] - 1:1,

1:1, 1:12
**District** [2] - 21:5
**documentation** [1] - 5:13
**domain** [1] - 6:3
**domains** [1] - 6:6
**done** [3] - 6:5, 20:11, 20:13
**due** [2] - 7:8, 7:16
**DULY** [2] - 12:8, 12:18
**during** [3] - 4:14, 8:2, 10:22

# E

**East** [1] - 1:9
**ecommerce** [1] - 5:1
**effect** [1] - 6:1
**embarked** [1] - 20:11
**employee** [1] - 13:4
**enforceable** [3] - 8:14, 8:18
**enjoy** [1] - 20:16
**entered** [1] - 19:19
**entering** [2] - 14:23, 17:13
**entire** [1] - 15:3
**environment** [1] - 5:10
**ESQUIRE** [4] - 1:15, 1:15, 1:18, 1:19
**essentially** [1] - 9:5
**event** [2] - 3:24, 18:8
**ex** [1] - 2:21
**exactly** [1] - 6:7
**examines** [1] - 7:25
**excuse** [1] - 8:23
**existing** [1] - 5:12

# F

**facilitate** [1] - 6:21
**fact** [3] - 8:13, 8:14, 8:17
**fair** [3] - 14:16, 14:20, 17:23
**faith** [1] - 8:22
**federal** [1] - 15:4
**fees** [1] - 19:12
**few** [1] - 6:24
**file** [1] - 11:18
**filed** [3] - 2:20, 3:4, 14:1
**files** [1] - 4:18
**final** [5] - 3:7, 7:20, 8:6, 9:15, 9:22
**finally** [1] - 11:3
**fine** [3] - 9:2, 9:21, 20:12
**firm** [1] - 2:9
**first** [1] - 12:2

**FISHER** [1] - 1:9
**five** [1] - 4:22
**focus** [1] - 9:14
**follow** [1] - 5:23
**following** [1] - 4:24
**FOLLOWS** [2] - 12:9, 12:19
**FOR** [1] - 1:1
**forced** [1] - 15:22
**foregoing** [1] - 21:6
**forth** [1] - 21:9
**free** [1] - 7:23
**freely** [3] - 14:24, 17:14, 19:20
**Friday** [1] - 1:10
**fully** [2] - 10:10
**functions** [1] - 17:17

# G

**generated** [1] - 5:14
**GoDaddy** [1] - 6:3
**graphics** [1] - 4:17
**great** [1] - 20:16
**greatly** [1] - 11:12
**Group** [2] - 2:5, 2:7
**GROUP** [1] - 1:14

# H

**hand** [4] - 12:6, 12:7, 12:16, 12:17
**HAPPY** [1] - 1:3
**Happy** [20] - 4:7, 4:11, 4:18, 4:21, 5:4, 5:7, 5:8, 5:15, 5:19, 5:20, 5:25, 6:11, 6:17, 9:6, 9:11, 9:12, 10:10, 10:12, 13:20
**HAVING** [2] - 12:8, 12:18
**hear** [3] - 14:11, 15:10, 17:8
**hereby** [1] - 21:6
**hereinbefore** [1] - 21:9
**high** [1] - 4:17
**HILL** [1] - 1:18
**Hill** [2] - 2:9, 2:12
**holiday** [1] - 20:16
**Honor** [27] - 2:6, 2:8, 2:11, 2:16, 3:9, 3:10, 8:25, 11:11, 13:1, 13:9, 14:7, 14:10, 14:22, 15:9, 15:15, 15:21, 16:4, 16:7, 16:15, 16:18, 19:1, 19:4, 19:17, 20:6, 20:7, 20:14, 20:15
**HONORABLE** [1] -

1:12
**hornets** [1] - 20:10
**hosting** [1] - 5:17
**hour** [1] - 7:1
**hours** [3] - 6:24, 6:25, 8:4

# I

**identified** [1] - 8:17
**identify** [1] - 4:23
**identity** [1] - 3:20
**images** [1] - 10:1
**INC** [1] - 1:3
**incident** [1] - 8:19
**incidental** [1] - 8:3
**include** [3] - 4:12, 4:16, 8:20
**included** [3] - 4:16, 8:16, 8:20
**includes** [1] - 5:2
**including** [2] - 8:10, 19:11
**indicating** [1] - 3:4
**individual** [4] - 13:8, 17:1, 17:2, 19:14
**individually** [3] - 13:3, 13:4, 17:1
**information** [3] - 10:21, 11:3, 11:5
**intend** [3] - 15:16, 18:21, 19:23
**intended** [1] - 8:12
**intending** [1] - 10:25
**interest** [1] - 21:11
**invoice** [2] - 7:7, 7:9
**involved** [1] - 8:11
**involvement** [3] - 18:3, 18:7, 18:8
**irrevocable** [1] - 10:10
**issue** [2] - 3:21, 3:25
**items** [1] - 4:23
**itself** [1] - 5:2

# J

**JAMES** [2] - 12:8, 12:12
**James** [2] - 12:12, 13:19
**JAY** [1] - 1:15
**Jay** [1] - 2:4
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:10, 21:6
**job** [1] - 9:2
**JR** [1] - 1:18
**judge** [3] - 10:6, 12:13, 19:7
**JUDGE** [1] - 1:12
**Judge** [11] - 2:4, 2:23,

3:13, 3:17, 11:21, 11:25, 12:5, 14:5, 14:19, 18:3, 19:23

**K**

**keep** [1] - 9:13
**knowledge** [4] - 3:22, 6:22, 8:1, 9:19

**L**

**L.L.C** [2] - 2:10, 2:13
**last** [1] - 3:4
**LAW** [1] - 1:14
**Law** [2] - 2:5, 2:7
**law** [1] - 2:9
**lawyer** [4] - 14:2, 14:18, 18:17
**lawyer's** [1] - 20:1
**lawyers** [2] - 16:8, 19:25
**least** [1] - 2:19
**leaving** [1] - 5:18
**left** [2] - 12:6, 12:17
**legal** [3] - 16:5, 18:14, 20:9
**length** [3] - 14:17, 17:24, 19:21
**letter** [3] - 3:1, 3:2, 3:3
**liability** [2] - 11:20, 11:22
**license** [2] - 10:11, 10:13
**limit** [1] - 10:25
**limited** [1] - 6:23
**list** [1] - 9:9
**lists** [1] - 11:5
**litigated** [1] - 15:3
**litigation** [2] - 15:8, 20:10
**LLC** [1] - 1:6
**LLP** [3] - 1:14, 1:18, 2:12
**logo** [1] - 4:17
**logos** [1] - 7:15

**M**

**maintenance** [3] - 5:14, 6:23, 8:3
**malicious** [4] - 6:13, 7:19, 7:24, 8:1
**marked** [1] - 20:2
**marketing** [3] - 4:1, 7:11, 9:10
**marriage** [1] - 21:11
**MARTINOTTI** [1] - 1:12
**matter** [8] - 2:24, 14:9,

15:3, 15:23, 16:1, 20:1, 20:2, 21:12
**McDaniel** [24] - 1:15, 2:4, 2:16, 3:9, 3:13, 3:17, 3:19, 9:2, 9:15, 9:25, 10:3, 10:6, 10:9, 10:25, 11:21, 11:25, 13:9, 13:12, 13:14, 16:15, 19:4, 19:7, 20:5
**McKay** [4] - 1:23, 1:24, 21:4, 21:15
**McKay-Soule** [4] - 1:23, 1:24, 21:4, 21:15
**media** [3] - 3:20, 7:11, 9:10
**mediate** [1] - 8:21
**mediation** [4] - 2:22, 2:23, 14:19, 18:2
**Megan** [4] - 1:23, 1:24, 21:4, 21:15
**megansoule430@ gmail.com** [1] - 1:25
**mentioned** [2] - 9:15, 9:25
**MICHAEL** [3] - 1:6, 12:18, 12:22
**Michael** [4] - 2:10, 2:13, 12:22, 16:21
**might** [2] - 6:24, 8:20
**minimal** [2] - 14:20, 18:6
**minor** [1] - 10:17
**missing** [1] - 4:23
**morning** [4] - 2:19, 3:3, 3:6, 14:6
**motion** [1] - 10:14
**MR** [34] - 2:4, 2:8, 2:11, 2:16, 3:9, 3:10, 3:13, 3:17, 3:19, 8:25, 10:3, 10:6, 10:9, 10:24, 10:25, 11:8, 11:11, 11:15, 11:21, 11:25, 13:1, 13:9, 13:12, 13:14, 13:16, 16:15, 16:18, 19:1, 19:4, 19:7, 19:17, 20:5, 20:7, 20:15
**MS** [2] - 2:6, 20:14

**N**

**N-A-D-L-E-R** [1] - 12:12
**NADLER** [1] - 12:8
**Nadler** [2] - 12:12, 13:19
**name** [4] - 12:11,

12:21, 13:18, 16:20
**named** [4] - 6:12, 13:2, 13:4, 16:25
**names** [1] - 6:3
**necessary** [2] - 7:2, 13:6
**need** [3] - 4:4, 6:3, 12:5
**negotiate** [1] - 8:21
**negotiations** [3] - 14:17, 17:24, 19:22
**nest** [1] - 20:10
**NEW** [1] - 1:1
**New** [2] - 1:10, 21:5
**next** [2] - 4:22, 6:24
**night** [1] - 3:4
**NJ** [2] - 1:16, 1:20
**nonetheless** [1] - 8:18
**nonexclusive** [1] - 10:11
**normally** [1] - 7:8
**notes** [1] - 10:7
**nothing** [3] - 8:23, 20:5, 20:7
**notice** [3] - 2:21, 4:2, 6:18
**notwithstanding** [1] - 8:14
**November** [1] - 7:8
**NUMBER** [1] - 1:2

**O**

**obligated** [1] - 6:25
**obligations** [1] - 17:17
**obviously** [3] - 9:16, 9:21, 11:15
**occur** [2] - 6:8, 6:24
**occurred** [1] - 6:15
**October** [2] - 4:8, 7:7
**OF** [1] - 1:1
**Official** [2] - 1:24, 21:4
**one** [10] - 6:7, 8:23, 10:6, 10:17, 10:20, 11:11, 12:3, 12:4, 12:6, 12:15
**Open** [1] - 2:2
**operations** [2] - 6:22, 9:20
**opportunity** [1] - 11:18
**order** [3] - 2:20, 14:1, 15:2
**originally** [1] - 2:21
**outcome** [1] - 21:12
**outside** [1] - 7:22
**own** [2] - 10:13, 10:23
**owner** [1] - 5:19

**P**

**p.m** [3] - 1:11, 2:2, 20:19
**page** [1] - 10:7
**paid** [3] - 7:10, 7:17, 10:10
**Parsippany** [2] - 1:16, 1:16
**part** [2] - 6:6, 11:20
**parte** [1] - 2:21
**particular** [1] - 16:9
**parties** [13] - 2:21, 2:22, 3:5, 3:24, 6:11, 8:7, 8:9, 8:10, 8:15, 8:19, 10:9, 19:19, 21:11
**party** [3] - 5:17, 7:3, 10:16
**pay** [1] - 2:17
**payment** [7] - 4:6, 7:13, 7:16, 7:20, 8:6, 9:15, 9:23
**payments** [1] - 7:6
**perform** [1] - 17:16
**performed** [1] - 4:11
**period** [2] - 8:2, 9:10
**perpetual** [1] - 10:11
**perspective** [1] - 11:17
**photographs** [2] - 7:15, 10:1
**photography** [3] - 4:12, 4:13, 4:16
**place** [3] - 12:6, 12:17, 21:8
**placed** [6] - 14:12, 15:11, 15:14, 15:17, 15:20, 17:9
**Plaintiff** [1] - 1:17
**plaintiff** [6] - 2:5, 2:7, 3:1, 12:3, 12:4, 20:5
**plaintiff's** [4] - 13:7, 13:17, 19:2, 19:5
**Plaintiffs** [1] - 1:4
**pleading** [1] - 11:19
**point** [4] - 6:11, 9:23, 9:24, 10:17
**points** [1] - 9:3
**position** [1] - 13:20
**possession** [2] - 10:22, 11:4
**possible** [1] - 6:5
**prejudice** [2] - 19:11, 20:3
**prepared** [1] - 4:10
**present** [1] - 13:3
**president** [1] - 13:21
**Princeton** [1] - 1:20
**principals** [1] - 8:10

**principle** [1] - 3:5
**printer** [1] - 10:18
**problem** [2] - 11:14, 13:17
**procedure** [1] - 5:23
**proceed** [1] - 13:13
**proceeding** [1] - 2:18
**proceedings** [1] - 21:6
**process** [5] - 5:4, 7:24, 8:5, 9:13, 11:6
**product** [3] - 4:19, 17:24, 19:21
**production** [2] - 5:9, 5:10
**products** [1] - 11:2
**progress** [1] - 2:24
**promotion** [1] - 4:19
**proofs** [1] - 10:18
**proprietary** [1] - 11:5
**provide** [8] - 4:2, 4:20, 4:25, 5:7, 5:12, 6:20, 6:25, 9:4
**provided** [5] - 3:20, 3:23, 6:15, 9:8, 9:9
**provides** [2] - 5:6, 7:9
**providing** [1] - 9:5
**public** [1] - 5:10
**purposes** [3] - 4:12, 10:14, 11:22
**pursuant** [1] - 13:25
**put** [3] - 3:14, 3:15, 8:13

**Q**

**questions** [13] - 9:12, 16:3, 16:8, 16:11, 16:14, 16:17, 18:12, 18:17, 18:19, 18:25, 19:2, 19:4

**R**

**Rackspace** [1] - 5:17
**raise** [2] - 12:6, 12:16
**realize** [1] - 8:20
**really** [2] - 7:24, 9:25
**receive** [2] - 3:2, 7:14
**received** [2] - 3:1, 9:19
**receives** [2] - 5:9, 7:10
**recognize** [1] - 8:18
**record** [15] - 2:3, 3:14, 3:16, 8:13, 12:11, 12:21, 14:12, 15:11, 15:14, 15:17, 15:20, 17:9, 19:6, 19:8, 19:16
**recreate** [1] - 5:9
**regarding** [1] - 9:16
**REKUC** [1] - 1:7

**Rekuc** [3] - 2:10, 2:13, 13:3
**related** [3] - 5:3, 8:9, 21:10
**relationship** [1] - 10:22
**release** [1] - 8:7
**remove** [2] - 5:24, 6:19
**removing** [1] - 5:16
**rendered** [2] - 4:7, 7:8
**Reporter** [3] - 1:24, 21:4, 21:16
**REPORTER'S** [1] - 21:2
**representation** [5] - 16:6, 18:15, 20:1, 20:9, 20:13
**representative** [5] - 12:3, 12:15, 13:17, 16:17, 16:19
**represented** [4] - 3:22, 15:25, 18:8, 19:25
**require** [1] - 17:16
**required** [1] - 1:22
**requirements** [1] - 6:23
**resolution** [2] - 3:7, 4:17
**resolved** [3] - 2:25, 14:9, 20:11
**resolving** [2] - 14:5, 15:23
**responsible** [1] - 8:3
**responsive** [1] - 11:18
**restrictive** [1] - 10:19
**result** [1] - 14:17
**resulted** [1] - 18:3
**return** [1] - 2:19
**returned** [1] - 11:6
**review** [2] - 4:22, 6:13
**reviewed** [1] - 3:23
**Rich** [1] - 8:24
**RICHARD** [1] - 1:18
**Richard** [3] - 2:8, 8:25, 13:1
**Ripen** [28] - 2:10, 2:13, 3:19, 4:7, 4:10, 4:19, 4:20, 4:25, 5:6, 5:12, 5:16, 5:23, 6:18, 6:19, 6:20, 6:25, 7:10, 8:2, 9:4, 9:5, 9:19, 10:10, 10:13, 10:14, 10:20, 10:21, 10:25, 13:2
**RIPEN** [1] - 1:6
**Ripen's** [2] - 10:17, 11:4
**rise** [2] - 2:1, 20:18
**RMR** [3] - 1:23, 21:4,

21:15
**Road** [2] - 1:16, 1:19
**Roszel** [1] - 1:19

## S

**sale** [1] - 5:11
**satisfied** [4] - 16:5, 18:14, 19:25, 20:9
**SCHWARTZ** [3] - 1:15, 2:6, 20:14
**Schwartz** [1] - 2:7
**season** [1] - 20:17
**second** [1] - 8:23
**Section** [1] - 1:22
**security** [1] - 5:21
**select** [1] - 12:3
**sell** [1] - 11:2
**services** [2] - 4:7, 4:11
**sessions** [1] - 2:23
**set** [2] - 3:1, 21:9
**setting** [1] - 9:3
**settled** [1] - 20:2
**SETTLEMENT** [1] - 1:4
**settlement** [15] - 3:5, 4:9, 4:13, 4:15, 4:25, 5:6, 7:9, 11:22, 17:24, 18:4, 18:22, 19:15, 19:20, 19:21, 19:24
**settling** [1] - 15:6
**several** [3] - 2:23, 14:1, 14:4
**shall** [1] - 12:13
**shared** [1] - 5:18
**sheet** [1] - 3:12
**show** [3] - 2:20, 14:1, 15:2
**side** [1] - 11:16
**sign** [1] - 9:22
**site** [1] - 9:18
**skipped** [1] - 10:7
**social** [3] - 3:20, 7:11, 9:9
**sole** [1] - 5:19
**someone** [1] - 3:11
**soon** [1] - 6:5
**sooner** [1] - 9:17
**sorry** [2] - 11:12, 13:1
**Soule** [4] - 1:23, 1:24, 21:4, 21:15
**specifically** [1] - 10:14
**specifications** [1] - 5:13
**spell** [2] - 12:10, 12:20
**stages** [1] - 5:5
**start** [1] - 10:23
**state** [3] - 12:10, 12:20, 13:18

**State** [1] - 1:9
**statement** [1] - 14:21
**States** [1] - 21:5
**STATES** [2] - 1:1, 1:12
**STEFANI** [1] - 1:15
**stenographically** [1] - 21:8
**step** [1] - 7:24
**Stephanie** [1] - 2:6
**Street** [1] - 1:9
**subject** [1] - 4:15
**subsequent** [1] - 7:16
**subsequently** [1] - 3:3
**successful** [1] - 14:8
**sufficient** [1] - 9:19
**supervised** [1] - 7:3
**supervising** [1] - 7:4
**swear** [2] - 12:4, 12:13
**sworn** [1] - 13:5
**SWORN/AFFIRMED** [2] - 12:8, 12:18
**system** [1] - 15:4

## T

**T-U-D-O-R** [1] - 12:23
**technical** [1] - 5:13
**Technology** [2] - 6:12, 7:4
**technology** [1] - 5:3
**ten** [1] - 10:18
**term** [3] - 3:11, 8:15, 8:19
**terms** [25] - 3:15, 4:25, 6:9, 6:20, 8:13, 8:17, 9:3, 10:20, 11:9, 11:23, 14:11, 14:14, 14:16, 15:10, 15:13, 15:16, 15:20, 17:8, 17:11, 17:16, 17:21, 17:23, 18:21, 19:20, 19:24
**TESTIFIED** [2] - 12:8, 12:18
**testify** [1] - 16:20
**testimony** [1] - 21:7
**THE** [118] - 1:1, 1:12, 2:1, 2:3, 2:14, 2:17, 3:11, 3:15, 3:18, 10:4, 10:8, 11:9, 11:14, 11:23, 12:2, 12:5, 12:10, 12:12, 12:13, 12:15, 12:16, 12:20, 12:22, 12:24, 12:25, 13:6, 13:10, 13:13, 13:15, 13:17, 13:19, 13:20, 13:21, 13:22, 13:24, 13:25, 14:3, 14:4, 14:7, 14:8, 14:10, 14:11,

14:13, 14:14, 14:15, 14:16, 14:22, 14:23, 14:25, 15:1, 15:5, 15:6, 15:9, 15:10, 15:12, 15:13, 15:15, 15:16, 15:18, 15:19, 15:21, 15:22, 15:24, 15:25, 16:2, 16:3, 16:4, 16:5, 16:7, 16:8, 16:10, 16:11, 16:12, 16:13, 16:16, 16:19, 16:21, 16:22, 16:24, 16:25, 17:4, 17:5, 17:7, 17:8, 17:10, 17:11, 17:12, 17:13, 17:15, 17:16, 17:19, 17:20, 17:22, 17:23, 18:1, 18:2, 18:5, 18:6, 18:10, 18:11, 18:13, 18:14, 18:16, 18:17, 18:18, 18:19, 18:20, 18:21, 18:23, 18:24, 19:2, 19:5, 19:13, 19:18, 19:19, 20:8, 20:16, 20:18
**thereafter** [1] - 8:5
**they've** [2] - 8:4, 8:17
**third** [4] - 5:17, 7:3, 8:10, 10:16
**three** [2] - 5:8, 9:11
**thumbnails** [1] - 4:20
**tickets** [1] - 5:13
**timing** [1] - 6:4
**Title** [1] - 1:22
**today** [6] - 3:2, 3:19, 4:6, 7:7, 8:13, 13:25
**training** [1] - 8:2
**transcript** [1] - 21:7
**transfer** [15] - 4:5, 5:1, 5:16, 6:1, 6:21, 6:22, 7:5, 7:19, 7:21, 7:25, 8:2, 9:14, 9:16, 9:17, 10:18
**transferred** [5] - 4:3, 5:3, 6:4, 7:18, 7:23
**Trenton** [1] - 1:10
**trial** [1] - 15:7
**trigger** [1] - 9:22
**True** [1] - 1:22
**true** [1] - 21:7
**TUDOR** [2] - 1:6, 12:18
**Tudor** [5] - 2:10, 2:13, 12:22, 13:2, 16:21
**turnover** [1] - 6:10
**two** [3] - 7:10, 7:14, 7:24
**two-step** [1] - 7:24

## U

**U.S** [1] - 1:9
**U.S.C** [1] - 1:22
**ultimately** [1] - 2:21
**under** [2] - 7:6, 9:20
**understood** [1] - 11:21
**unfortunately** [1] - 2:24
**United** [1] - 21:5
**UNITED** [2] - 1:1, 1:12
**up** [1] - 3:1
**utility** [1] - 5:21

## V

**vendors** [1] - 8:11
**voluntarily** [3] - 14:24, 17:14, 19:20

## W

**waiving** [1] - 15:7
**WALLACK** [1] - 1:18
**Wallack** [2] - 2:9, 2:12
**web** [1] - 6:2
**website** [19] - 5:1, 5:2, 5:10, 5:14, 5:16, 5:20, 5:23, 6:9, 6:10, 6:13, 6:14, 6:21, 7:5, 7:17, 7:18, 7:23, 9:16, 9:20
**Wednesday** [2] - 4:21, 4:24
**weeks** [2] - 6:24, 14:1
**WEINER** [1] - 1:14
**Weiner** [2] - 2:5, 2:7
**whole** [1] - 8:4
**WITNESS** [42] - 12:12, 12:22, 13:19, 13:21, 13:24, 14:3, 14:7, 14:10, 14:13, 14:15, 14:22, 14:25, 15:5, 15:9, 15:12, 15:15, 15:18, 15:21, 15:24, 16:2, 16:4, 16:7, 16:10, 16:12, 16:21, 16:24, 17:4, 17:7, 17:10, 17:12, 17:15, 17:19, 17:22, 18:1, 18:5, 18:10, 18:13, 18:16, 18:18, 18:20, 18:23, 19:18
**works** [3] - 4:10, 4:21, 4:23
**writing** [1] - 4:2